# EXHIBIT A

## IN THE CIRCUIT COURT FOR ANDERSON COUNTY, TENNESSEE

JOYCE GADDIE, individually and as the )
Administrator ad litem of the Estate of )
VERN GADDIE JR. )
                               )
     **PLAINTIFF** )
                                 )
**vs.** )    **No: B5LGTO3l64**
                                 )
**GGNSC CLINTON LLC** )    **JURY DEMAND**
**d/b/a Golden Living Center – Windwood** )
                                 )
     **DEFENDANT** )

---

# COMPLAINT

---

Comes now the Plaintiff Joyce Gaddie, individually as the wife of Vern Gaddie Jr., and as the Administrator ad litem of the Estate of Vern Gaddie Jr., and files this Complaint against Defendant GGNSC Clinton LLC, d/b/a Golden Living Center - Windwood, for various causes of action against the Defendant as it relates to the injuries Mr. Gaddie suffered while a resident at the Golden Living Center - Windwood Nursing Home.

### I.    *JURISDICTION*

1.    Vern Gaddie Jr. is deceased. He died on December 14, 2014 due to abuse and neglect he suffered while a resident of the Golden Living Center - Windwood Nursing Home located in Clinton, Tennessee.

2.    The Plaintiff, Joyce Gaddie brings this cause of action against the Defendant on behalf of her deceased husband, and pursuant to her appointment as the Administrator ad litem of the Estate of Vern Gaddie Jr. Letters of Limited Administration were issued to

the Estate of Vern Gaddie Jr., appointing Joyce Gaddie as Administrator ad litem, on or about October 9, 2015 in the Probate Court for Anderson County, Tennessee.

3.     Accordingly, the Plaintiff brings this cause of action pursuant to Tennessee Code Annotated §30-1-109, as well as in her individual capacity pursuant to Tennessee Code Annotated §20-5-106, §20-5-107, §20-5-110, §20-5-113, as it relates to her husband's wrongful death.

4.     Defendant GGNSC Clinton LLC, is a domestic for profit corporation, who does business as the Golden Living Center - Windwood Nursing Home, which at all times material to this lawsuit was engaged in business in the State of Tennessee. They may be served via their registered agent for service of process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

5.     The Defendant Corporation owns, operates, and staffs a nursing home commonly known as Golden Living Center - Windwood (hereinafter referred as "Nursing Home"), which is located at 220 Longmire Road, Clinton, Tennessee.

6.     As the owner of the Nursing Home, the Defendant employs physicians, nurses, and related staff to provide healthcare services to nursing home residents in their Anderson County, Tennessee nursing home facility.

7.     The causes of action described within this lawsuit arise out of the business conducted by Defendant and their ownership, operation, and management of the Nursing Home.

8.     Venue and Jurisdiction are properly vested in this Honorable Court pursuant to Tennessee Code Annotated §20-4-101.

Page 2 of 21

9. Pursuant to the statutory requirements of Tennessee Code Annotated §29-26-121, the Plaintiff has given written notice of this cause of action at least sixty (60) days prior to the filing of this Complaint. Specifically, Golden Living Center - Windwood was notified via certified mail at its physical location that a health care liability action would be forthcoming against the Nursing Home, as well as at its registered agent for service of process as provided by the Secretary of State for Tennessee. The notification occurred by certified mail, return receipt requested, within the applicable statute of limitations, as set forth in the Affidavits attached hereto as *Exhibit A* to this Complaint.

10. Pursuant to the statutory requirements of Tennessee Code Annotated §29-26-122, the Plaintiff is filing contemporaneously with this Complaint a Certificate of Good Faith, as *Exhibit B* to this Complaint.

## II. DEFINITIONS AND NATURE OF DEFENDANT'S LIABILITY

11. Whenever the term "Defendant", "Defendant Corporation", or "Nursing Home" are used within this suit, such term collectively refers to and includes Golden Living Center – Windwood and GGNSC Clinton, LLC.

12. Whenever in this suit it is alleged that the Defendant Corporation did any act or thing or failed to do any act or thing, it is meant that the officers, agents, or employees of the designated corporation respectively performed, participated in, or failed to perform such acts or things while in the course and scope of their employment or agency relationship with said Defendant.

13. All individual staff members, nurses, doctors, and other personnel providing or responsible for the care and treatment of the Plaintiff, at all times incident to this lawsuit,

Page 3 of 21

were acting as agents and/or employees of the Defendant within whose facility they were operating at the time of their actions and/or omissions as regards to their treatment and care of the Plaintiff.

## III.    FACTS

14.    Plaintiff incorporates paragraphs 1 – 13 by reference, as if they were set forth verbatim herein.

15.    Vern Gaddie Jr. was born on November 20, 1937 in Benton Harbor, Michigan.

16.    Mr. Gaddie and his wife raised four children and was actively employed until the age of seventy-two (72).

17.    Prior to his admission into the Nursing Home, Mr. Gaddie lived with his wife at their home located in Clinton, Tennessee.

18.    On or about September 16, 2014, at Seventy-Six (76) years of age, Mr. Gaddie was admitted to Oak Ridge Methodist Medical Center after experiencing a fall. Upon his admission Mr. Gaddie had increased confusion, was identified as a fall risk, and weighed 230 lbs.

19.    Mr. Gaddie remained under the care of Oak Ridge Methodist Medical Center until September 10, 2014 when he was discharged to the Nursing Home to receive medical rehabilitation. The goal was to receive skilled nursing care so that he could return home with his wife.

20.    Upon his admission, the Nursing Home conducted a comprehensive assessment of Mr. Gaddie which focused on his present health, his anticipated recovery period, and the medical care he was to receive while a resident of the Nursing Home.

Page 4 of 21

21. The admission assessment revealed that Mr. Gaddie weighed 226 lbs, suffered from liver disease, and needed extensive assistance from the nursing home staff to move in and out of bed, to use the rest room, to bathe and dress, and to move about the facility in general.

22. The assessment also revealed that Mr. Gaddie required limited assistance to eat and to walk, and that he was unsteady on his feet and unable to stabilize himself without help from the staff.

23. Mr. Gaddie was described as being unable to adequately control his bladder and bowels, and was described as being either frequently, or always incontinent.

24. Mr. Gaddie was to return home after receiving skilled nursing care from the Nursing Home. Mr. Gaddie was to receive speech therapy, occupational therapy, physical therapy and was to receive medical care and treatment relating to his pre-existing liver disease.

25. While Mr. Gaddie was a resident of the Nursing Home, he did not receive proper medical care and medical treatment to address his medical condition, and furthermore, he did not receive the proper medical care and medical treatment to ensure his healthy release from the Nursing Home.

26. While a resident at the Nursing Home, Mr. Gaddie suffered a loss of dignity, loss of enjoyment of life, sustained multiple injuries because of the negligence and malpractice of the Nursing Home, and ultimately suffered death.

27. While a resident of the Nursing Home, Mr. Gaddie's family would often find him either laying or sitting in his own urine and feces. The family would clean him up without

Page 5 of 21

any help or input from the medical staff, even though the staff was alerted by the family of Mr. Gaddie's condition.

28. Furthermore, Mr. Gaddie's clothes were often unchanged, leaving it up to the family to assist him in the changing of his clothes, as well as perform basic grooming functions for him.

29. Mr. Gaddie was not properly supervised and cared for by the Nursing Home's medical staff and employees while he a resident of the Nursing Home.

30. On September 18, 2014 Mr. Gaddie received a large cut on his leg while being negligently transferred by Nursing Home staff from his wheelchair to his bed. This wound caused excessive and profound bleeding and forced Mr. Gaddie to be rushed to the hospital to receive seven (7) stitches to stop the profuse bleeding.

31. After receiving this injury the Nursing Home medical staff failed to properly treat and bandage the wound on Mr. Gaddie's leg.

32. Mr. Gaddie was also allowed to fall multiple times while at the Nursing Home because the Nursing Home failed to provide him with a safe environment or take necessary and proper steps to reduce his risk of falls.

33. The 1st fall occurred on September 25, 2014 wherein he received a large cut on his right elbow while transferring himself from his bed to his wheelchair.

34. Mr. Gaddie had called for assistance for this transfer, and after receiving none, attempted to transfer himself. In the process he was injured.

35. Nursing Home staff quickly blamed Mr. Gaddie for his injury.

36.     Shortly after his first fall on September 27, 2014 a skin assessment was performed on Mr. Gaddie. The report revealed multiple wounds and abrasions found upon his body, wounds and abrasions he received while under the exclusive care, control, and custody of the Nursing Home.

37.     Furthermore, the bandages placed upon Mr. Gaddie to cover the wounds were not properly applied; nor were the wounds cleaned or re-bandaged by Nursing Home staff in a timely manner.

38.     After a resident of a Nursing Home falls, the Nursing Home has an affirmative duty to conduct a thorough and complete investigation to identify the reason for the fall, and to formulate a plan to address and eliminate the risk and potential for future falls.

39.     The Defendant Nursing Home failed to conduct a thorough and complete investigation after Mr. Gaddie's first fall, and failed to formulate a plan to address and eliminate the risk and potential for future falls.

40.     A Nursing Home has an affirmative duty to provide a resident with a safe environment and the Defendant Nursing Home had an affirmative duty to provide a safe environment for Mr. Gaddie and to limit the likelihood of falls and injuries to him.

41.     The Defendant Nursing Home failed to provide Mr. Gaddie with a safe environment while he was a resident at the Nursing Home.

42.     The Nursing Home records reveal that after Mr. Gaddie's first fall, the Nursing Home's Interdisciplinary Team met and discussed the fall.

43.     The Interdisciplinary Team's proper function after a fall is to implement new fall risk prevention provisions, which are specifically designed to provide a Nursing Home resident with a safe environment and to prevent future falls.

44.     In this case, the Interdisciplinary Team recommended that bed rails be attached to Mr. Gaddie's bed to prevent future falls. This recommendation requires both an Order from Mr. Gaddie's physician and consent from his family, neither of which were ever sought or obtained by the Nursing Home. Therefore, this recommendation was never implemented.

45.     Second, the Interdisciplinary Team recommended that Mr. Gaddie's bed be placed in a low position on the ground to prevent future falls.

46.     Nursing Home records reveal that this recommendation was perhaps, already in place. If in fact it were in place before the first fall, the recommendation to adopt this measure begs the question as to why this would be suggested as an appropriate fall risk prevention provision for future falls. If it was not yet implemented, then the Nursing Home records contain factual errors relating to the care and treatment Mr. Gaddie received while a resident of the Nursing Home. Either way, this recommendation did not provide for a safe environment for Mr. Gaddie nor did it lessen the risk he would experience future falls.

47.     The Interdisciplinary Team also recommended that an alarm should be utilized to quickly alert the staff of Mr. Gaddie's attempts to ambulate by himself from either his wheelchair, or bed. This recommendation did not prevent future falls nor did it create a safe environment for Mr. Gaddie.

48. The Interdisciplinary Team also recommended that a mechanical lift be implemented for all future transfers of Mr. Gaddie. This recommendation was never implemented.

49. The Nursing Home's failure to implement these fall risk provisions allowed Mr. Gaddie to suffer further injuries, loss of dignity of life and loss of enjoyment of life.

50. As a direct and proximate failure of the Nursing Home to follow and implement actions designed to eliminate or lessen the fall risk and to provide for a safe environment for Mr. Gaddie, he fell for the second time on November 3, 2014.

51. This fall occurred when only one staff member attempted to transfer him without a mechanical lift from his wheelchair to the bed.

52. According to the Nursing Home's own records, one CNA stood Mr. Gaddie to his feet from his wheelchair, in an attempt to transfer him to his bed without using a mechanical lift as previously recommended.

53. Moreover, the actions of the CNA occurred in direct violation of a Nursing Home's specific direction to both utilize a mechanical lift for Mr. Gaddie's transfers, as well as a record from the previous day which specifically mandated that at least two staff members to be utilized in all transfers for Mr. Gaddie.

54. During the transfer on November 3, 2014, Mr. Gaddie fell forward onto the floor and he forcefully landed on his face.

55. Mr. Gaddie sustained life altering injuries from this fall.

56. Mr. Gaddie's head was cut in three places and he bled profusely from his nose, nostrils, and mouth.

57. His face, along with his mandible, shoulder, left hand, shoulder, and knee were all significantly bruised, and there was blood found within his ear canal.

58. As a result of this life changing fall, Mr. Gaddie was transferred to Oak Ridge Methodist Hospital for medical care and treatment.

59. Upon arrival at the hospital, Mr. Gaddie received medical treatment relating to injuries he sustained in the fall, as well as for injuries which had developed relating to the Nursing Home's failure to provide medical care and treatment relating to his liver disease while he was a resident of the Nursing Home.

60. The Nursing Home's failure to treat Mr. Gaddie's liver disease caused him to suffer significant weight gain during the time he was a resident. Mr. Gaddie's weight ballooned from 226 lbs on his admission to 254 lbs on October 28, 2014.

61. This is a significant weight gain. Mr. Gaddie's lower extremities, including his abdomen, stomach and legs swelled and bloated significantly. This swelling and bloating is known as lower extremity edema.

62. This weight gain should have caused the staff of the Nursing Home to immediately address this medical condition. Unfortunately, the staff did nothing to medically treat the weight gain, nor did they do anything to identify the reason for the significant increase in his weight.

63. Furthermore, Nursing Home medical staff failed to alert Mr. Gaddie's resident physician of this medical problem.

64. The Nursing Home was aware of the swelling and bloating of Mr. Gaddie's lower extremities, for it was obvious to anyone who saw Mr. Gaddie, but the staff failed to address the underlying medical cause of this problem.

65. The Nursing Home medical staff never sought to properly treat this medical condition. Instead, the Nursing Home attempted to correct the medical problem by limiting Mr. Gaddie's fluid intake through fluid restrictions.

66. Furthermore, the medical staff failed to administer medication to allow his body to rid itself of the accumulated liquid in his lower extremities and the toxins which accumulated in his blood.

67. As a result of his liver disease, Mr. Gaddie's body was unable to rid itself of toxins in his blood without appropriate medications, because his liver was not able to perform this function on its own.

68. As a direct and proximate results of the Nursing Home's medical staff's malpractice Mr. Gaddie suffered from hepatic encephalopathy.

69. While Mr. Gaddie suffered from this medical condition, he experienced mental changes which rendered him unable to perform daily functions of life, he became disoriented, experienced a lack of balance, had lethargic movements and suffered a general overall mental decline.

70. As a result of the massive fluid buildup in his abdomen, Mr. Gaddie experienced shortness of breath, swelling and bloating of his abdomen, and a noticeable and significant decrease in his overall health and wellness.

Page 11 of 21

71.     In short, because of the medical negligence of the staff of the Nursing Home, Mr. Gaddie suffered a wide assortment of injuries and medical conditions he would not have otherwise suffered, but for the negligence and medical malpractice of the Nursing Home.

72.     While receiving treatment for his injuries at Oak Ridge Methodist Hospital, Mr. Gaddie had 5.3 liters of accumulated fluid and accompanying toxins, removed from his body before his discharge from the hospital on November 7, 2014.

73.     After his discharge from the hospital, Mr. Gaddie's health declined rapidly. He received end of life Hospice care at his home until his death.

74.     Vern Gaddie Jr. died on December 14, 2014 from continued complications relating to his liver disease and the lack of care and treatment his disease received while a resident of the Nursing Home.

## IV.     CAUSES OF ACTION

### COUNT ONE - NEGLIGENCE

75.     Plaintiff incorporates paragraphs 1 through 74, by reference, as set forth verbatim herein.

76.     Plaintiff avers that Defendant's actions and inactions, through their agents, servants and/or employees, during Mr. Gaddie's stay at the Nursing Home constitute general negligence by the Defendant.

77.     Plaintiff avers that the Defendant owed Mr. Gaddie a duty of care while he was a resident of the Nursing Home and breached their duty of care owed to Mr. Gaddie.

78.     The Defendant owed a duty to Mr. Gaddie to identify and care for his medical needs while he was a resident of the Nursing Home.

79.     The Defendant owed Mr. Gaddie a duty to provide him with a safe environment while he was a resident of the Nursing Home.

80.     The Defendant owed Mr. Gaddie a duty to prevent additional harm to him while he was a resident of the Nursing Home.

81.     The Defendant owed a duty to Mr. Gaddie to provide and maintain a properly skilled and/or trained staff, capable of caring for his medical needs and conditions while he was a resident of the Nursing Home.

82.     Plaintiff aver that the Defendant breached all of the above mentioned duties of care owed to Mr. Gaddie and that he suffered damages as a direct and proximate result of these breaches by the Defendant.

83.     Accordingly, the damages and injuries which Mr. Gaddie suffered include physical pain and suffering, medical treatment and bills relating to these injuries, loss of dignity, loss of enjoyment of life, mental pain and suffering from these injuries, and ultimately death.

84.     Mr. Gaddie is entitled to monetary compensation as a result of the negligence of the Defendant, as set forth herein.

## COUNT TWO – MEDICAL MALPRACTICE

85.     Plaintiff incorporates paragraphs 1 through 84, by reference, as though set forth verbatim herein.

86.     The Defendant and the Nursing Home staff owed a duty of care to Mr. Gaddie to provide care, treatment, and services within acceptable standards of care of nursing homes for its location in Clinton, Tennessee.

Page 13 of 21

87.    The care, treatment and services provided by the Nursing Home to Mr. Gaddie was subpar, and it failed to provide such services to him in accordance with the standard of care for nursing homes located in Clinton, Tennessee.

88.    The Defendant was negligent with the care, treatment and services provided to Mr. Gaddie, through their acts or omissions, which include, but are not limited to, the following:

a)    Failure to provide Vern Gaddie Jr. with basic and necessary care and supervision;

b)    Failure to provide timely medical intervention to Mr. Gaddie;

c)    Failure to timely notify the physician of significant changes in Mr. Gaddie's condition;

d)    Failure to develop and implement a minimally adequate plan of care to meet Mr. Gaddie's individual needs, and to timely and appropriately update his plan of care upon changes in his condition;

e)    Failure to protect Mr. Gaddie from neglect and abuse;

f)    Failure to adequately assess, monitor and provide Mr. Gaddie with appropriate medications;

g)    Failure to adequately assess and monitor Mr. Gaddie's significant increase in weight;

h)    Failure to adequately assess and monitor Mr. Gaddie's intake of water so as to prevent his from becoming dehydrated;

i)    Failure to keep Mr. Gaddie clean, comfortable and well groomed;

j)      Failure to adequately provide Mr. Gaddie with the proper medications to allow his body to rid itself of the toxins which built up in his bloodstream;

k)      Failure to properly treat and care for his pre-existing medical conditions including his liver disease;

l)      Failure to provide adequate physical, occupation, and speech therapy for Mr. Gaddie so as to enable his to regain his strength and exit the nursing home facility once those achievements had been met;

m)      Failure to provide nurses and nurse assistants sufficient in number to provide appropriate nursing care and services to Mr. Gaddie, so as to assure that he received minimally adequate and necessary care;

n)      Failure to adequately hire, train, supervise and retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses, nurse assistants and other personnel in said facility to assure that Mr. Gaddie received the minimally necessary and appropriate care, treatment and services;

o)      Failure to provide truthful and accurate information as to the quality of care, treatment, and services provided by the Nursing Home to Mr. Gaddie and his family;

p)      Failure of the managerial agents and corporate officers to adequately hire, train, supervise and retain staff and/or personnel so as to assure that Mr. Gaddie received the necessary care to prevent harm in accordance with the applicable standard of care in Clinton, Tennessee, and;

q)      Failure to provide care commensurate with the applicable standards of care for nursing homes in Clinton, Tennessee, or a similarly situated community.

89.     As a result of these failures Mr. Gaddie suffered injuries and damages he would have not otherwise suffered.

90.     Furthermore, the aforesaid acts are the sole proximate cause of the damages suffered by Mr. Gaddie including extreme physical pain and suffering, medical treatment and bills for these injuries, loss of dignity, loss of enjoyment of life, mental pain and suffering from these injuries, and ultimately death.

91.     The Plaintiff avers that the Defendant is liable for the acts of their agents, servants and/or employees of the Nursing Home under theories of agency and *respondeat superior* for their failure to provide proper medical care for Mr. Gaddie.

## COUNT THREE – WRONGFUL DEATH

92.     Plaintiff incorporates paragraphs 1 through 91, by reference, as though set forth verbatim herein.

93.     The wife of the Decedent, Vern Gaddie Jr., brings a cause of action against the Defendant individually in her capacity as his surviving spouse, as it relates to the wrongful death of Mr. Gaddie.

94.     Pursuant to Tennessee's Wrongful Death Statute, Mr. Gaddie's causes of action pass to his wife and Administrator ad litem, Joyce Gaddie for her prosecution.

95.     Plaintiff avers that as a direct and proximate result of the negligence and/or the medical malpractice committed towards Mr. Gaddie, he wrongfully died.

96.     The Plaintiff was only seventy six (76) years of age at the time of his death. He had a substantial capacity to enjoy life, and had a life expectancy of Eleven (11) years

pursuant to the 1983 Individual Annuity Table found within the Mortality Tables of Tennessee Code Annotated.

97.     As a result of the foregoing negligence and medical malpractice committed by the Defendant, the Plaintiff is entitled to recover just compensation for medical, funeral and burial expenses, physical and mental pain and suffering, as well as loss of dignity and loss of enjoyment of life suffered by Mr. Gaddie, the pecuniary value of the Mr. Gaddie's life, and punitive damages designed to both punish the Defendant for its willful and wanton conduct and to discourage other potential defendants from similar actions.

### COUNT FOUR – LOSS OF CONSORTIUM

98.     Pursuant to Tennessee Law, the wife may maintain a separate cause of action for loss of consortium as a result of the negligent acts and medical malpractice committed by the Defendant to Mr. Gaddie.

99.     Joyce Gaddie avers that due to the negligence, medical malpractice, and wrongful death suffered by her husband, she has lost the society, companionship, love and affection of Mr. Gaddie.

100.    Joyce Gaddie is entitled to recover damages for the loss of her society and the companionship with Mr. Gaddie, as well as for her loss of the love and affection of Mr. Gaddie relating from his injuries and wrongful death.

### COUNT FIVE – DEFENDANT'S WANTON AND RECKLESS CONDUCT

101.    Plaintiff incorporates paragraphs 1 through 100, by reference, as set forth verbatim herein.

102.    The longevity, scope and severity of Defendant's failures and actions, and its conscious indifferent actions with regard to the welfare and safety of Mr. Gaddie, constitute wanton and reckless conduct as defined by Tennessee Law.

103.    This wanton and reckless conduct was undertaken by the Defendant without regard to the health and safety consequences of Mr. Gaddie. Moreover, such conduct evidences such little regard for their duties of care, of good faith, or fidelity owed to Mr. Gaddie, as to raise a reasonable belief that the acts and omission set forth above are the result of conscious indifference to Mr. Gaddie's rights and welfare.

104.    By reason of such conduct, Mr. Gaddie is entitled to and therefore asserts a claim for punitive damages in an amount sufficient to punish and deter the Defendant and others like them, from engaging in such conduct in the future.

## V.    DAMAGES

105.    Plaintiff incorporates paragraphs 1 through 104, by reference, as set forth verbatim herein.

106.    As a direct and proximate result of the acts or omissions of the Defendant, as set forth herein, Mr. Gaddie suffered physical and mental injuries, pain and suffering, emotional distress and ultimately death.

107.    As a further direct and proximate result of the Defendant Corporations conduct, Mr. Gaddie required medical attention and hospitalization, and incurred liability to pay reasonable and necessary charges for such.

108.    Mr. Gaddie is entitled to monetary compensation relating to the damages which he suffered injuries include extreme physical pain and suffering, medical treatment and

bills for these injuries, loss of dignity, loss of enjoyment of life, mental pain and suffering from these injuries, and ultimately death. Joyce Gaddie is empowered by statute to prosecute the Defendant pursuant to these causes of action.

109. Joyce Gaddie, is entitled to recover just compensation which include medical, funeral and burial expenses, pain and suffering, damages for the loss of her husband's life, loss of society, companionship, love and affection, and for all damages provided by the Tennessee Wrongful Death Statute found at Tennessee Code Annotated §20-5-106, §20-5-107, §20-5-110 and §20-5-113, as well as for the mental pain, suffering and anguish, as well as the emotional distress which she has endured as a result of the negligent, willful and wanton conduct of the Defendant.

110. Finally, as a direct and proximate result of Defendant's wanton and reckless conduct, Mr. Gaddie is entitled to an award of punitive damages.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff demands the following:

A. That the Plaintiff be allowed to file this Complaint.

B. That summons be issue and served upon the Defendant, commanding the Defendant to appear and answer herein.

C. Upon final hearing of this cause, that the Plaintiff be awarded a judgment against the Defendant for compensatory damages in the amount to be determined by the jury, but in no manner an amount greater than Eight Hundred and Fifty Thousand Dollars ($850,000.00) relating to the Defendant's negligence, medical malpractice, and the Mr. Gaddie's wrongful death.

D.      Upon final hearing of this cause, that Joyce Gaddie be awarded a judgment against the Defendant for loss of consortium in the amount to be determined by the jury, but in no manner an amount greater than Five Hundred Thousand Dollars ($500,000.00).

E.      Upon final hearing of this cause, that the Plaintiff be awarded punitive damages against the Defendant in amount to be determined by the jury, but in no manner an amount greater than Two Million Dollars ($2,000,000.00).

F.      Additionally, the Plaintiff demands pre-judgment interest and post-judgment interest, attorney fees, court costs, and for such other and further relief, at law or in equity, both general and special, to which Plaintiff may show himself justly entitled.

G.      Plaintiff demands a jury of twelve (12) at the trial on this matter.


**Respectfully Submitted this 22nd day of December, 2015.**

DAVID M. BOYD, BRR #019980
THE BOYD FIRM, PC
Attorneys at Law
900 S. Gay Street, Suite 705
Knoxville, Tennessee 37902
(865) 246-1800
*Attorney for Plaintiff*

### COST BOND

We do hereby acknowledge ourselves as surety for the costs in this cause in accordance with Tennessee Code Annotated § 20-12-120.

This the 22nd day of December, 2015.

JOYCE GADDIE, individually, and as the Administrator
ad litem of the Estate of Vern Gaddie Jr.

**PRINCIPAL**

DAVID M. BOYD
THE BOYD FIRM, PC
Attorneys at Law
900 S. Gay Street, Suite 705
Knoxville, Tennessee 37902
(865) 246-1800
*Attorney for Plaintiff*

**SURETY**

## AFFIDAVIT PURSUANT TO T.C.A. 29-26-121

STATE OF TENNESSEE )
COUNTY OF KNOX     )

COMES NOW, _Dan I M B_, being first duly sworn, according to law, makes

oath and deposes as follows:

1.      That I am over eighteen (18) years of age and otherwise competent to testify and have personal

knowledge of the facts contained herein.

2.      I am an employee of The Boyd Firm, Attorneys at Law PC, 900 S. Gay St. Suite 705

Knoxville, TN 37902.

3.      On _5/4/15_, I personally placed a Notice of Intent to Sue in the United

States Mail to the following entity: _66 Ule Clapha LLL ,ly Agut Corp_
_Service Company._

The Notice was mailed to the following address:

_2507 Paston Ave Nashville Tn 37203_

4.      The Notice was sent certified mail, return receipt requested, pursuant to the statutory

requirements set forth in Tennessee Code Annotated 29-26-121.

5.      The Notice was sent informing the above named entity of The Boyd Firm, PC's intent to sue

them for medical malpractice on behalf of the following individual: _Vvn Beddis T_

6.      The Notice contained a HIPPA compliant medical authorization as called for by Tennessee

Code Annotated 29-26-121.

Further Affiant Sayeth Not.

Employee Signature

Sworn to and subscribed before me,
this the 14 day of September, 2015.

NOTARY PUBLIC
My Commission Expires: 8 31 19

EXHIBIT
A

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Corporation Service
Company
2908 Poston Ave.
Nashville, Tn 37203

9590 9403 0220 5146 7710 28

7011 3500 0000 2588 0008

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Eric Johnson

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

SEP 1 4 2015

BY: ..................

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053        Domestic Return Receipt

## AFFIDAVIT PURSUANT TO T.C.A. 29-26-121

STATE OF TENNESSEE )
COUNTY OF KNOX )

    COMES NOW, _David M Boyd_, being first duly sworn, according to law, makes

oath and deposes as follows:

    1.    That I am over eighteen (18) years of age and otherwise competent to testify and have personal

knowledge of the facts contained herein.

    2.    I am an employee of The Boyd Firm, Attorneys at Law PC, 900 S. Gay St. Suite 705

Knoxville, TN 37902.

    3.    On _____5/4/15_____, I personally placed a Notice of Intent to Sue in the United

States Mail to the following entity: _Golden Living Center Windwood_

The Notice was mailed to the following address:

_220 Longmire Rd 1 Clinton Tn 37716_

    4.    The Notice was sent certified mail, return receipt requested, pursuant to the statutory

requirements set forth in Tennessee Code Annotated 29-26-121.

    5.    The Notice was sent informing the above named entity of The Boyd Firm, PC's intent to sue

them for medical malpractice on behalf of the following individual: _Vern Beeler Jr._

    6.    The Notice contained a HIPPA compliant medical authorization as called for by Tennessee

Code Annotated 29-26-121.

    Further Affiant Sayeth Not.

                                     _____

                                     Employee Signature

Sworn to and subscribed before me,
this the 14 day of September 2015.

_Jennifer Frantzen_
NOTARY PUBLIC
My Commission Expires: 8 31 19

*(Notary seal: JENNIFER FRANTZEN, STATE OF TENNESSEE NOTARY PUBLIC, KNOX COUNTY)*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to: GGNSC
Clinton LLC
Golden Living Center-Windwood
dba Windwood Assisted Living
220 Longmire Road
Clinton, Tn. 37716

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

7011 3500 0000 2588 0046

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Eula Beeler_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name): Eula Beeler   C. Date of Delivery: 9-8-15

D. Is delivery address different from item 1?
If YES, enter delivery address below:
SEP 1 4 2015
BY:

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# IN THE CIRCUIT COURT FOR ANDERSON COUNTY, TENNESSEE

JOYCE GADDIE, individually and as the )
Administrator ad litem of the Estate of )
VERN GADDIE JR. )
      )
    **PLAINTIFF** )
      )
vs. )     No: _____
      )
GGNSC CLINTON LLC )     **JURY DEMAND**
d/b/a Golden Living Center – Windwood )
      )
    **DEFENDANT** )

## PLAINTIFF'S CERTIFICATE OF GOOD FAITH

COMES NOW the Plaintiff, by and through counsel, in accordance with T.C.A. § 29-26-122, I hereby state the following:

Plaintiff's Counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief the following:

(A)     That each is competent under § 29-26-115 to express opinion(s) in the case; and

(B)     That each believe, based on the information available from the medical records reviewed concerning the care and treatment of the Plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the cause of action consistent with the requirements of T.C.A. § 29-26-115.

I have never been found in violation of T.C.A. § 29-26-122.

Respectfully Submitted this 22 day of December, 2015.

**DAVID M. BOYD, BPR #019980**
The Boyd Firm, PC
Attorneys at Law
900 S. Gay Street, Suite 705
Knoxville, Tennessee 37902
(865) 246-1800
*Attorney for Plaintiff*

EXHIBIT
B